999 F.2d 133
 17 Employee Benefits Cas. 1006, Pens. Plan Guide P 23880H
David R. GORDON; W. Queen Dulin; Diane M. Meadows; Nancy
J. Blank; Richard Siegel; Walter B. Taylor; Syvilla D.
Burton; Phyllis C. Morgan; Elizabeth Petrella; Robert D.
Calver; James A. Simmering, Plaintiffs-Appellants,
v.
BARNES PUMPS, INC., Defendant-Appellee.
 No. 92-3216.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 2, 1993.
Decided June 21, 1993.
Rehearing Denied Aug. 2, 1993.
 
 James L. Childress (argued and briefed), Calhoun, Benzin, Kademenos & Heichel, Mansfield, OH, for plaintiffs-appellants.
 Kevin H. Young, Benesch, Friedlander, Coplan & Aronoff, Cleveland, OH, Thomas O. McCarthy (argued and briefed), Fred A. Ricks, Jr. (briefed), McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, MO, for defendant-appellee.
 Before: GUY and BOGGS, Circuit Judges; and GIBSON, Chief District Judge.*
 BOGGS, Circuit Judge.
 
 
 1
 Plaintiffs appeal the order of the district court granting summary judgment for the defendant employer. The district court ruled that appellant's state law claims were preempted by ERISA, and that the ERISA Plan in effect superseded all previous agreements. Plaintiffs now argue that ERISA does not govern, and that they are entitled to benefits based on previous agreements not superseded by the employer's Plan. For the reasons stated, we affirm.
 
 
 2
 * Appellants are all former employees of Barnes Pumps, Inc. Prior to July 25, 1988, Barnes Pumps, at that time known as Peabody Barnes, had no formal, written severance pay plan. However, it was the policy of the company to give severance benefits of one week for every year spent with the corporation.
 
 
 3
 Effective July 25, 1988, Barnes Pumps adopted the Pullman Company Severance Pay Plan ("Pullman Plan"). This Plan codified the unwritten policy previously in effect. Participants would receive one week of severance pay for each full year of service, subject to a two-week minimum and a twenty-six week maximum. The clear terms of the Pullman Plan stated that no severance benefits were vested, and that Barnes Pumps reserved the right to modify, suspend, or terminate the Plan. Specifically, it stated:
 
 NO VESTING
 
 4
 No participant or beneficiary will have any vested right to benefits under the plan.
 
 
 5
 * * * * * *
 
 FUTURE OF THE PLANS
 
 6
 While the Company intends to continue the Severance Pay Plan indefinitely, it is difficult to predict the future and an unqualified commitment is impossible. Thus, the Company reserves the right to modify, suspend or terminate the Plan, at any time and for any reason.
 
 
 7
 No amendment, however, may deprive you of any benefit payments to which you are entitled at the time of amendment or termination. Should the Plan be modified, any claims incurred prior to the amendment date will be paid in accordance with the Plan provisions in effect prior to the modification. Any claims incurred on or after the amendment date will be paid in accordance with the new provisions.
 
 
 8
 Should the Plan terminate, all eligible claims incurred prior to the date of termination will be paid to the extent of available assets if submitted within a reasonable period of time, as determined by the Plan Administrator. Any claims incurred after the date of termination will not be considered for payment.
 
 
 9
 Burks Pumps, Inc. acquired Barnes Pumps on April 1, 1990. On April 5, 1990, Paul Baldetti, President of Burks Pumps, met with the employees and assured them that, in the immediate future, benefits would remain the same. True to Baldetti's assertion, between April and October, no modification of the Pullman Plan occurred. Terminated employees received benefits pursuant to the Pullman Plan. However, on October 11, 1990, Barnes (the company did not change its name after Burks assumed control), announced a new policy for determining severance benefits. The new Plan's terms are as follows:
 
 
 10
 Length in Years of Employee's service Amount of Severance Pay
 0"5 $1,550
 6"10 $2,550
 11"15 $3,550
 16"20 $4,050
 21k $4,550
 
 
 11
 On November 21, 1990, the Board of Directors adopted the new Plan ("Barnes Plan"). Section 2.4 of the Barnes Plan states that its effective date is October 4, 1990. Section 2.3 of the Barnes Plan states: "This Severance Pay Plan constitutes the entire severance pay plan and policy of Barnes Pumps ... and supersedes and replaces any and all other policies, plans, understandings, obligations, and agreements, whether express or implied, written or oral."
 
 
 12
 In May 1991, the plant that employed appellants closed, and all of the participants bringing this suit were terminated. These appellants were paid in accordance with the Barnes Plan that became effective in October 1990. Appellants then brought suit in state court, arguing that they were entitled to the benefits available under the pre-1988 policy, codified in the June 1988 Pullman Plan. Barnes Pumps removed the action to federal court, and then moved for summary judgment. The district court dismissed appellants' state law claims, finding that they were preempted by ERISA. The court also found that the Barnes Plan was clear and unambiguous, and that it superseded all previous agreements. Accordingly, the court granted Barnes's motion for summary judgment. The plaintiffs then brought this timely appeal.
 
 II
 
 13
 The Pullman Plan initiated in 1988 is explicit. It clearly states that the Plan was not binding and that the company reserved the "right to modify, suspend, or terminate the Plan, at any time and for any reason." It is well established that an employer who reserves the right to alter a plan may exercise that right. Musto v. American General Corporation, 861 F.2d 897, 907 (6th Cir.1988), cert. denied, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989); In re White Farm Equipment Company, 788 F.2d 1186 (6th Cir.1986). In this case, all of the appellants were terminated in May 1991. Prior to termination, the Pullman Plan had been replaced legally by the Barnes Plan. Accordingly, the appellants clearly do not have a claim under the Pullman Plan.
 
 
 14
 Realizing the futility of relying upon the Pullman Plan in this appeal, appellants, all of whom were with the company prior to 1988, now turn for support to the pre-1988 policy of the company. They argue that the pre-1988 policy of providing severance benefits was irrevocable, and that they had a vested right to the benefits it conferred. Appellants state their position in the alternative. They first argue that this pre-1988 policy does not constitute an ERISA plan, and therefore, ERISA rules do not apply. If ERISA rules do not apply, appellants argue that remand is proper. On the other hand, appellants argue that if the pre-1988 policy does constitute an ERISA Plan, vesting occurred, and the benefits it provided cannot be revoked.
 
 
 15
 Appellants' position is incorrect. First, the unwritten policy in existence prior to 1988 constitutes an ERISA Plan. Adams v. Avondale Industries, Inc., 905 F.2d 943 (6th Cir.), cert. denied, 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1991), is directly on point. In Adams, the appellants brought suit alleging that a written plan improperly amended their benefits under an oral agreement. The court squarely treated the oral policy as an ERISA plan. The court ruled that the written policy constituted a valid amendment of the "unwritten pay plan." Id. at 950. The present case is indistinguishable.
 
 
 16
 As further support that the pre-1988 policy constitutes a plan, one need look no further than the plain language of ERISA. 29 U.S.C. § 1002(1) states that a welfare plan is:
 
 
 17
 any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that such plan, fund or program was established or is maintained for the propose of providing for its participants or their beneficiaries through the purchase of insurance or otherwise, (A) ... benefits in the event of ... unemployment.... (Emphasis added).
 
 
 18
 Certainly the pre-1988 policy comports with this definition.
 
 
 19
 Because the pre-1988 policy constitutes a valid ERISA welfare plan,[1] appellants do not have a vested right to the benefits. Congress explicitly exempted welfare plans, as opposed to pension plans, from ERISA's vesting requirements. 29 U.S.C. §§ 1051 and 1081. Congress feared that imposing vesting standards on welfare benefit plans would inhibit the establishment of such plans. Adams, 905 F.2d at 947. Therefore this court has stated that it "must avoid any rule that would have the effect of undermining Congress' considered decision that welfare benefit plans not be subject to a vesting requirement." Ibid. The facts of Adams are identical to the present ones. Because the benefits did not vest in Adams, then certainly vesting did not occur in the present case.[2] Accordingly, the employer had the right to modify its Plan. It did so legally, and appellants are only entitled to benefits under the Barnes Plan.
 
 
 20
 This position is further buttressed by the inconsistency that would result from the contrary result. Plaintiffs concede that the 1988 Pullman Plan constitutes a codification of the pre-1988 policy. Plaintiffs further concede that their rights under the Pullman Plan did not vest, and that they have no right to sue under the Pullman Plan. By accepting plaintiffs' position, this court would be giving more value to the informal oral policy than to the more recent written Pullman agreement. Plaintiffs' position also would render the Barnes Plan meaningless. We reject these conclusions.
 
 
 21
 Assuming that the pre-1988 policy did not constitute an ERISA Plan, the result would be the same. If the oral policy does not qualify as a plan, then the statements are no more than oral representations. It is well-established that the written terms of a plan may not be modified or superseded by oral assurances or other extrinsic evidence. Boyer v. Douglas Components Corp., 986 F.2d 999 (6th Cir.1993); Musto v. American General Corporation, 861 F.2d at 910; Nachwalter v. Christie, 805 F.2d 956 (11th Cir.1986). Moreover, the Barnes Plan clearly states that it cannot be modified by any oral representations made at any time. For these reasons, the appellants' position must be rejected.
 
 III
 
 22
 In Count One of their complaint, appellants alleged a cause of action for state law breach of contract. The Plan participants argue that the company breached its promise when it amended the Pullman Plan and adopted the Barnes Plan. This state law claim is clearly preempted by ERISA and must be dismissed because it "relate[s] to an employee benefit plan." 29 U.S.C. § 1144(a); Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).
 
 
 23
 In Count Three, appellants alleged a promissory estoppel claim. The participants claim that when Burks acquired Barnes Pumps, the President of Burks Pumps met with the employees and assured them that benefits would remain the same.[3] The appellants argue that based on these statements, the appellee was estopped from making any alterations.
 
 
 24
 We reject appellants' position. Appellants' argument contravenes a basic principle of ERISA that terms of a plan may not be modified or superseded by oral statements or other extrinsic evidence. Musto v. American General Corp., 861 F.2d at 907. Furthermore, the Barnes Plan clearly states that it cannot be modified by any oral representations made at any time.
 
 
 25
 Appellants also have not shown that they reasonably and detrimentally relied on any statements by the company. On the contrary, all plan participants knew or should have known from the express terms of the Pullman Plan that benefits could be altered at any time. The present case is distinguishable from Armistead v. Vernitron Corp., 944 F.2d 1287 (6th Cir.1991). In Armistead, the company had a welfare plan that gave it the right to modify its provisions. The company plant closed down, and employees were given the opportunity to transfer. Numerous employees chose to retire because they were told by the company that the Plan provided favorable retirement benefits. Upon retiring, the company informed the employees that the Plan had been altered and the employees would not receive benefits. At that point, it was too late for the employees to obtain a transfer.
 
 
 26
 The employees then brought suit. The Armistead court stated in dicta that an estoppel claim would lie because the appellants had relied on the company's statement that they could retire with benefits. The present case is clearly distinguishable. Appellants cannot show that they took any detrimental action as a result of statements by the employer. Accordingly, we reject the estoppel claim.
 
 IV
 
 27
 The appellants contend that the motion for summary judgment was premature because they should have been given the opportunity to conduct additional discovery. The appellants made this same argument to the district court, and it was rejected.
 
 
 28
 The district court properly construed all facts in favor of the appellants. Appellants asserted that additional discovery would have shown that the company routinely provided benefits prior to 1988. Appellants also make vague allegations that discovery might have uncovered additional facts in their favor. These allegations do not change the outcome of the case. Moreover, a party cannot avoid summary judgment on the basis of nebulous assertions. First National Bank v. Cities Services Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). Additional discovery was not necessary. Accordingly, the district court's decision was proper.
 
 
 29
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Benjamin F. Gibson, Chief United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 ERISA divides employee benefit plans into two types: employee welfare and employee pension plans. Both sides agree that if this is a plan, then it constitutes a welfare, not a pension, plan
 
 
 [2]
 In Adams, 905 F.2d at 949, as well as in In re White Farm Equipment Co., 788 F.2d 1186, 1193 (6th Cir.1986), this court has stated in dicta that under certain circumstances employee welfare plan benefits may vest. However, this can only be by private agreement between the parties. In the present case, no evidence exists that the employer contracted away its right to make modifications
 
 
 [3]
 Plaintiffs do not allege that prior to 1988 the company made any assurances that would serve as a basis for an estoppel theory of recovery. Plaintiffs only allege that the employer, prior to the adoption of the Pullman Plan in 1988, never mentioned any contingencies or reservation of rights by the Company to modify or terminate the severance pay agreements