9 F.3d 107
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
F. Bruce CORRELL and Kathleen P. Hartong, Plaintiffs-Appellants,
v.
TELEDYNE INDUSTRIES, INC. and Teledyne Monarch Rubber Co.,
Defendants-Appellees.
 No. 92-4261.
 United States Court of Appeals, Sixth Circuit.
 Oct. 27, 1993.
 
 Before: MARTIN and BOGGS, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 F. Bruce Correll and Kathleen Hartong appeal the district court's grant of summary judgment for defendants in this action, brought pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. Secs. 1001-1461, for severance pay. The district court found that Correll's and Hartong's rights to severance pay vested on their final days of active work, rather than upon notice of impending termination, and that defendants' refusal to pay benefits under a modified severance plan was not "arbitrary and capricious." For the following reasons, we affirm.
 
 
 2
 Teledyne Monarch Rubber, a division of Teledyne Industries Inc., is the plan sponsor of the Severance Pay Plan for Eligible Salaried Non-Union Employees, an employee welfare benefit plan within the meaning of 29 U.S.C. Secs. 1001-1461. The Plan was contained in defendants' Salaried Employee Handbook, which incorporated by reference the original separation pay policy dated September 1, 1985. The Handbook explicitly stated that the described benefits were subject to subsequent revision by the company at any time that management perceived such changes to be necessary, and also stated that the Handbook was not a contract or employment agreement.
 
 
 3
 On February 15, 1991, defendants notified F. Bruce Correll, Kathleen Hartong, and their other employees by letter that the company planned to close its plants in Ohio, Tennessee, and Kentucky. The letter, issued pursuant to the Worker Adjustment and Retraining Notification Act, 29 U.S.C. Sec. 2101, stated that the closure would result in "permanent employment loss" for employees at those plants on scheduled dates between April 18 and June 13, inclusive.
 
 
 4
 On February 28, Teledyne Monarch Rubber announced a revised separation pay policy with an effective date of February 16, and provided a copy of the new Plan to each employee. This revision was apparently made in anticipation of the sale of Teledyne Monarch Rubber. The 1985 Plan had stated that it was the policy of Teledyne Monarch Rubber to provide severance pay, in "recognition of faithful service and to alleviate hardship," to employees permanently terminated without prejudice. The 1985 Plan did not condition payments on the absence of subsequent re-employment. The 1991 revised Plan stated that employees were eligible for severance pay if they were terminated and not offered re-employment either by the purchaser of Teledyne Monarch Rubber or by any other division of Teledyne Industries, Inc.
 
 
 5
 Correll, a salaried manager with twenty-five years of service, was subsequently terminated on May 15 and immediately re-employed by the purchaser on May 16. Hartong, a salaried manager with twenty-three years of service, was terminated on August 1 and immediately re-employed by the purchaser on August 2. Neither Correll nor Hartong received separation pay, in accordance with the terms of the 1991 Plan, and both received fewer seniority benefits in their new jobs.
 
 
 6
 Correll and Hartong subsequently filed suit in Ohio state court, alleging (1) that under 29 U.S.C. Secs. 1001-1461, the defendants' denial of severance benefits and modification of the Plan was "arbitrary, capricious, unreasonable, in bad faith and erroneous as a matter of law;" and (2) that the defendants' action was a breach of contract, based on a theory of promissory estoppel. After defendants removed this action to the district court, the district court granted summary judgment for the defendants on both claims of both plaintiffs. Correll and Hartong timely appealed to this Court.
 
 
 7
 Needless to say, we apply a de novo standard of review to the district court's grant of summary judgment. E.E.O.C. v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1985). The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In determining whether there is a genuine material issue for trial, we must draw all reasonable inferences from the facts in the light most favorable to the nonmoving parties, Correll and Hartong. Matsushita, 475 U.S. at 587; E.E.O.C., 904 F.2d at 334; United States v. Hodges X-Ray, Inc., 759 F.2d 557, 562 (6th Cir.1985). Under these standards, we believe that the district court did not err.
 
 
 8
 Correll and Hartong here argue that there was a genuine issue of material fact as to whether their separation benefits under the old Plan vested on February 15, 1991, upon notification of their impending termination. They acknowledge that Teledyne's severance benefits plan is a welfare benefit plan, and is thus not subject to the mandatory vesting requirements of 29 U.S.C. Secs. 1001-1461. Adams v. Avondale Industries, Inc., 905 F.2d 943, 947-49 (6th Cir.) (citing Massachusetts v. Morash, 490 U.S. 107, 109 (1989)), cert. denied, 498 U.S. 984 (1990). An employer is normally free to alter or even eliminate welfare benefit plans without consideration of the employees' interests. id.; Gordon v. Barnes Pumps, Inc., 999 F.2d 133, 136 (6th Cir.1993). Correll and Hartong, however, claim that Teledyne did not have an unfettered, unilateral right to amend their severance benefits because it manifested an intent, through "agreement" or private design, to have those benefits vest upon notice of termination. See International Resources v. New York Life Ins., 950 F.2d 294, 301 (6th Cir.) (welfare benefit plans may vest even if no explicit provisions for vesting exist in plan documents), cert. denied, 112 S.Ct. 2941 (1992); In re White Farm Equipment Co., 788 F.2d 1186, 1193 (6th Cir.1986) (welfare benefit plans may vest according to parties' intent). We disagree.
 
 
 9
 In evaluating the parties' intent, we first look to the explicit language of the benefits plan. The district court correctly observed that it is the language of the 1985 severance benefits Plan which must be construed in order to determine whether the plaintiffs had any vested rights on February 15. The 1985 Plan contains the following language: "Severance pay is a payment to an employee upon termination over and above the salary actually earned." (emphasis added) Although "termination" is not explicitly defined in this document, the district court noted that, according to the Plan, the employees would be notified of their eligibility for these benefits upon severance. This date of notification was defined as "the last day of work." The district court also observed that termination is defined in the separation pay procedure section, in an insurance context, as "the last day of active work." The court found this language sufficient to determine that the last day of active work was considered the date of termination for Plan purposes, and therefore that severance pay benefits did not vest until that date.
 
 
 10
 Plaintiffs vigorously dispute this interpretation of the Plan language. Correll and Hartong point to the affidavits that they have submitted, which state their belief as experienced Human Resources managers that the company policy was to interpret "termination" to mean the notification date of impending separation. In Gordon, 999 F.2d at 136 n. 2, we noted that the existence of a policy or agreement between the parties could cause an employee welfare benefit plan to vest. Plaintiffs have not, however, adduced any evidence other than their affidavits to controvert the language contained in the 1985 Plan. Affidavits expressing employees' beliefs regarding payment of severance benefits, without more, are insufficient to create a genuine issue of material fact in a case where the defendants have met their initial burden of introducing evidence of a clear termination policy. Franklin v. Pitney Bowes, Inc., 919 F.2d 45, 47-48 (6th Cir.1990). In this case, the plaintiffs admit the existence of the clear, "cautionary" language in the employee Handbook that states that the 1985 Plan, incorporated by reference, is subject to change at any time by management. Plaintiffs have also failed to submit any evidence, other than their affidavits, that controverts the language in the 1985 Plan regarding termination. Thus, the district court did not err in finding as a matter of law that "termination" under the 1985 Plan meant "the last day of active work," and did not err in granting summary judgment based on the fact that plaintiffs' rights to severance benefits had not vested under the Plan as of February 15, 1991. Even though the 1985 Plan was amended after Correll and Hartong received their notification letters, these letters did not cause their rights to separation pay benefits to vest under that Plan. See Gordon, 999 F.2d at 136.
 
 
 11
 The district court also correctly observed that Correll and Hartong are ineligible for separation pay benefits under the 1991 Plan, because they were both subsequently employed by the purchaser of Teledyne Monarch Rubber. Plaintiffs point out that other employees not rehired by the purchaser were immediately employed by other companies and did receive severance pay. Plaintiffs argue that this proves that defendants' action in denying them separation benefits was arbitrary and capricious. We disagree. The district court's reasoning is persuasive on this point:
 
 
 12
 The employer and/or subsequent purchaser who would be forced to pay a salary to a rehired employee as well as severance pay would be doubly burdened. This is not the case where an employee is not rehired. The cost to the employer/purchaser would only be the severance pay in that instance. It is reasonable that an employer would fashion its severance policy in a manner to avoid the double expense.
 
 
 13
 As the court also pointed out, to hold otherwise would be to construe the 1991 Plan provisions as providing an extra "benefit" to the employees, instead of merely serving to insulate employees to some extent against the rigors of unemployment. This interpretation is inconsistent with the plain intent of the 1991 plan provision that states that rehire by a purchaser or another company division would make an employee ineligible for severance pay. Thus, the district court was correct in finding that Correll and Hartong were ineligible for benefits under the 1991 plan.
 
 
 14
 Plaintiffs' remaining contentions are the following: (1) that defendants should be ordered to pay severance benefits on a theory of promissory estoppel under federal common law; and (2) that defendants failed to act with the proper fiduciary responsibility in amending the 1985 plan. Although the promissory estoppel claim appears to have been properly raised before the district court, it is without merit. Plaintiffs have adduced no evidence, apart from their affidavits, that controverts the Handbook language stating that the Plan is subject to change at any time. The fiduciary responsibility claim is also without merit, as it is clear that a plan sponsor does not act as a fiduciary when deciding to amend or terminate a welfare benefit plan. Adams, 905 F.2d at 947-49.
 
 
 15
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation