**David H. RUSSELL, et al., Plaintiffs,**

v.

**KERN'S BAKERIES, INC., Defendant.**

No. 3:94–cv–0206.

United States District Court,
E.D. Tennessee,
Knoxville.

Dec. 22, 1994.

**1164**

David L. Bacon, Knoxville, TN, for Plaintiffs.

Wilson S. Ritchie, Ritchie, Wise & Reeves, PC, Knoxville, TN; Robert R. Campbell, and Dean B. Farmer, Hodges, Doughty & Carson, Knoxville, TN; and Deborah A. Sudbury, and Douglas M. Towns, Jones, Day, Reavis & Pogue, Atlanta, GA, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JORDAN, District Judge.

In this civil action, the court heard all of the testimony and the closing arguments of counsel on Thursday, December 15, 1994. The court will state herein its findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52. The court may amend its findings, or make additional findings, upon the post-judgment motion of a party. Fed. R.Civ.P. 52(b).

For the reasons stated below, the court rules in favor of the defendant, Kern's Bakeries, Inc., in this civil action. The court will therefore direct the clerk to enter judgment for the defendant in this civil action, in accordance with these findings of fact and conclusions of law.

This civil action arises under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). There is no dispute concerning the fact that the employee welfare benefit plan in question in this litigation is a plan covered by the provisions of ERISA, and that this court therefore has jurisdiction of the subject matter of this civil action, which arises under federal law. There is also no dispute concerning the fact that the plan in question, the Kern's Bakeries, Inc., Employ-

ee Health Benefit Plan, which became effective on October 1, 1989, falls into the ERISA category of a welfare benefit plan, as opposed to a pension benefit plan. This specific plan is a single-employer, self-funded plan which provides hospitalization and major medical benefits.

The plaintiffs in this civil action are retirees who worked for the defendant Kern's Bakeries, Inc., and who were covered by this welfare benefit plan. When they retired, in June 1992, the plan provided hospitalization and major medical benefits at no cost to retirees. However, in January 1994, George M. Curtis, the president of the defendant, wrote on behalf of the defendant to these and other retirees that Kern's Bakeries, Inc., could no longer afford to provide health care benefits to its retirees at no cost to retirees, and that the defendant would therefore require contributions from retirees for the maintenance of their coverage under the plan. In this letter, Mr. Curtis described a two-phase program for retiree contributions to the cost of this health care plan, with two levels of required contributions, one for Medicare-eligible retirees, and another for non-Medicare-eligible retirees. This litigation followed the plaintiffs' receipt of this letter.

In their complaint, as amended, the plaintiffs say that they retired from their employment by the defendant pursuant to a contract with the defendant under which all employees who accepted an offer of early retirement would have their hospitalization and major medical benefits provided by Kern's Bakeries, Inc. The plaintiffs concede, as they must, that the welfare benefit plan in question contains clauses which permit the defendant to amend or to terminate the plan at any time, and they concede, again as they must, that the plan was amended, by amendment # 008, dated March 3, 1994, to require contributions from all employees and from all retirees eligible for coverage under the plan.

■ To quote from the plaintiffs' trial brief, "The health plan documents in the possession and control of Defendant reserve the right by the Defendant to change the plan without agreement by the plan beneficiaries...." This is entirely consistent with the provisions of ERISA. *See Musto v. American General Corporation,* 861 F.2d 897, 906–07 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). The plaintiffs argue, however, that the defendant is estopped to rely on the plan language permitting amendment or termination of the plan, or to rely on any amendment to the plan.

■ In light of the facts that this civil action arises under ERISA, and that the theories under which the plaintiffs seek relief are promissory and equitable estoppel, the court ruled earlier that the plaintiffs' jury demand should be stricken. The relief sought by the plaintiffs in this civil action is equitable in nature. For example, in ¶ 5 of their *ad damnum,* the plaintiffs pray for "all benefits due ... under the provisions of the Welfare Benefit Plan of Kern's Bakery, Inc., retroactive to April 1, 1994," which is relief in the nature of restitution, an equitable remedy. In ¶ 6 of their *ad damnum,* the plaintiffs similarly pray for a declaration "that all rights and benefits due [them] are vested and nonforfeitable, including the right to have the Defendant pay the plaintiffs' health insurance premiums," which the court reads as a prayer for declaratory or injunctive relief.

In light of the relief sought by the plaintiffs, the law of this circuit, reviewed and restated in *Bair v. General Motors Corporation,* 895 F.2d 1094 (6th Cir.1990), holds that the plaintiffs have no right to trial by jury of this civil action. The plaintiffs, in arguing against the motion to strike their jury demand, relied on *Sprague v. General Motors Corporation,* 857 F.Supp. 1182 (E.D.Mich. 1994), and pointed to the distinction drawn in that case between general retirees who were bound by the provisions of a welfare benefit plan, and early retirees who were held to be entitled to continuing health insurance coverage at no cost to them, under theories of equitable and promissory estoppel. However, in *Sprague,* the district court adjudicated the issues presented without a jury, and held the claims based on estoppel theories to be claims for "other appropriate *equitable* relief" under 29 U.S.C. § 1132(a)(3) (emphasis added). *Sprague* therefore provides no au-

thority for a right to trial by jury of the plaintiffs' claims in this civil action.

▪ Turning to the substance of the plaintiffs' claims, as the district court in *Sprague, supra,* 857 F.Supp. at 1186, noted, citing authorities from the Court of Appeals for the Sixth Circuit, in the case of a welfare benefit plan, as opposed to a pension benefit plan, there is no statutory minimum vesting requirement, and therefore whether rights under a welfare benefit plan vest, and, if they do vest, the conditions under which they vest, depend solely on an agreement between an employer and its employees. Other applicable law under ERISA provides as follows. "It is well established that an employer who reserves the right to alter a plan may exercise that right." *Gordon v. Barnes Pumps, Inc.,* 999 F.2d 133, 136 (6th Cir.1993) (citations omitted). It is also well established, according to the court of appeals in *Gordon v. Barnes Pumps,* "that the written terms of a plan may not be modified or superseded by oral assurances or other extrinsic evidence." *Id.* at 137 (citations omitted).

▪ In *Gordon v. Barnes Pumps, supra,* the court rejected the plaintiffs' estoppel theory on precisely this ground, and on the ground that the plan itself provided that it could not be modified by any oral representations made at any time. It is also the law in this circuit that at least in the absence of any agreement to the contrary, an employer's unilateral amendment of a welfare benefit plan does not violate whatever fiduciary obligations the employer might have under ERISA. *Pope v. Central States Southeast and Southwest Areas Health and Welfare Fund,* 27 F.3d 211 (6th Cir.1994).

There is authority in this circuit for the application of an estoppel against a denial of health insurance benefits to retirees under an ERISA welfare benefit plan. In *Armistead v. Vernitron Corporation,* 944 F.2d 1287 (6th Cir.1991), the court of appeals upheld the district court's application of the theory of equitable estoppel to preserve retirees' health insurance benefits. However, the unique facts in *Armistead v. Vernitron Corporation* bear emphasis. In that case, the plaintiff retirees were covered originally by a benefit plan described in a booklet which included a reservation of the employer's right to amend or to terminate the plan. After the defendant's employees organized, the defendant and the employees' collective bargaining agent negotiated a collective bargaining agreement which included a reference to the welfare benefit plan as described in the pre-existing booklet.

After the execution of this collective bargaining agreement, another corporation purchased the plant at which the plaintiff retirees worked, and therefore became their employer. This new employer directed its provider of insurance benefits to produce a benefits package similar to the one in effect under the former employer, including retiree insurance benefits. However, the plan booklet produced by the new insurer omitted the language reserving a right to amend or to cancel the plan, and the new policy issued by this insurer provided for the continuance of insurance benefits after retirement "subject to the terms of the group policy."

A new round of collective bargaining between the new employer and its employees, including the plaintiff retirees before their retirement, did not produce any substantial changes in the pertinent documents. Three years later, another round of collective bargaining produced a new plan booklet, which, through what the employer admitted was an oversight, omitted all references to retiree health and life insurance benefits.

In *Armistead v. Vernitron Corporation,* when the defendant employer decided to close the plant at which the plaintiffs worked, a local personnel manager advised the plaintiffs not to retire until the plant closing, believing that this would entitle the plaintiffs to unemployment compensation in addition to their other benefits. The local personnel manager did not know until the day of the plant closing that a higher corporate officer, the chief operating officer, took the position that employees who lost their jobs because of the plant closing would be entitled only to the minimum continuation-of-benefits rights provided under federal law. This created a situation in which early retirees received their full retirement insurance benefits, while the *Armistead* plaintiffs, who waited to retire

until their plant closed, did not receive such benefits.

On the basis of these facts, the district court in *Armistead v. Vernitron Corporation* found that the defendant employer and its employees had agreed in their collective bargaining agreement that the employer would provide lifetime retiree insurance benefits not subject to unilateral termination. In other words, the district court, and, upon appeal, the court of appeals, held that the employer and its employees had agreed that the employees' retiree insurance benefits were vested. This, the court held, entitled the plaintiff retirees to relief under the Labor–Management Relations Act, as well as under ERISA. The doctrine of equitable estoppel provided an alternative ground for relief, after the Labor–Management Relations Act and ERISA, and was applied on the basis of the misrepresentations made before the plant closing by representatives of the employer, who did not disclose that the employer believed that it retained the power to terminate the plan with respect to the plaintiff retirees.

In the case at bar, the court finds the pertinent facts as follows. William C. Schwartz was the president of the defendant in 1992 when the plaintiffs retired, and George M. Curtis, the executive vice president. (Mr. Curtis became president of the defendant in September 1992). These two men planned the termination of retiree health benefits under the plan, as a cost-saving measure for the benefit of the defendant corporation. In the past, Kern's Bakeries, Inc., had permitted employees age 55 or older with 25 or more years of service to retire with the health benefits available to those who retired later, but this policy was not stated anywhere in the plan. Mr. Schwartz and Mr. Curtis decided to eliminate retiree health benefits effective after June 1992, but to allow any employee who met the 55/25 criteria to retire before the end of June and thereby to have the retiree health benefits provided under the plan before the elimination of this category of benefits.

The plan itself states that it is neither a contract nor an inducement of employment, that it is subject to amendment "at any time without prior notice to or the consent of any Covered Person or of any person entitled to receive payment of benefits under the Plan," and that the plan is subject to termination by Kern's Bakeries, Inc. In the *Kern's Employee Health Benefit Plan* booklet distributed to employees, the plan is described as "non-contributory with respect to employee coverages—the company pays the entire cost." Towards the end of this booklet, following the benefit plan summary, appears the following legend, in bold-face type, and contained in a box:

THIS BOOKLET IS NOT A CONTRACT. IN THE INTEREST OF SIMPLICITY, THE COVERAGE HAS BEEN DESCRIBED IN RATHER GENERAL TERMS IN THIS BOOKLET. THE EXTENT OF YOUR COVERAGE AT ALL TIMES IS GOVERNED BY THE COMPLETE TERMS OF THE KERN'S BAKERIES, INC. EMPLOYEE HEALTH BENEFIT PLAN.

Effective July 1, 1992, the defendant amended the plan, by amendment # 006, to define "covered person" in part as "an eligible former employee who was retired prior to July 1, 1992." This accomplished what Mr. Schwartz and Mr. Curtis had decided upon, the termination of retiree health benefits for employees who retired on or after July 1, 1992. These corporate officers decided to speak to employees in groups about this amendment and other, related matters, and so prepared in writing a speech, which they revised and had reviewed by counsel. In their speech, which they gave to various groups of employees at the defendant's three plants, Mr. Schwartz and Mr. Curtis spoke of the continually increasing cost of health care coverage. They stated that the defendant could no longer afford to provide its retirees with health care coverage "and continue to insure the security and future of the other 1,000 plus employees at Kern's Bakeries." They announced, therefore, that "[e]ffective June 30, 1992, the health, life insurance, and death benefit will be discontinued for anyone retiring from active employment ... after that date."

In this prepared speech, Mr. Schwartz and Mr. Curtis stated that this action did not affect retirees already covered by the plan,

who would "remain covered, for the immediate future." They reminded their audiences that employees who met the 55/25 criteria could retire before the effective date of the change in the plan, and thereby retire with health benefits under the plan, and stated carefully that they could not make for any employee a decision to take early retirement. In a paragraph on which the defendant now places much reliance, these corporate officers stated,

> This new health insurance benefit plan is not written "in stone". Depending on a number of occurrences—such as the economic conditions, what our competitors and other employers do, the need for our Company to grow and reduce costs, etc.— we may have to change the plan again. But, we will try this plan for now and see what happens.

The court finds credible the testimony of Mr. Schwartz and Mr. Curtis that they gave this speech almost *verbatim* to each group of employees with whom they met. These corporate officers would not have gone to the trouble of preparing, revising, and subjecting to review their written speech if they had not been concerned about misrepresenting to the defendant's employees the substance of their speech, including the fact that the plan was subject to further amendment.

The court finds also that these corporate officers delegated to plant managers the duty to inform those employees who did not attend any group meeting of the elimination of retiree health benefits coverage, and that the plant managers were instructed to use the prepared speech in doing so. The Knoxville plant manager, John Chapel, now the defendant's vice president for sales and marketing, testified that he read the written speech to employees *verbatim*, and that he instructed a subordinate, Porter Walker, to do the same.

The court also finds credible the testimony of Mr. Schwartz and Mr. Curtis that the defendant did not have, in advising employees of the impending amendment to the welfare benefit plan and of the possible desir-

ability of early retirement in light of the impending amendment, an intention to induce any employee to take early retirement. The actual amendment to the plan, amendment # 006, did nothing but render those who retired after the stated date ineligible for retiree health benefits under the plan. In the absence of any other change to the combination of compensation and benefits provided to Kern's Bakeries, Inc.'s employees, the court cannot find in this case any offer made by the defendant employer to induce early retirement.

The employees who retired before the end of June 1992 were replaced by new employees. No plaintiff was subject to a mandatory retirement rule. Given these facts and the substance of amendment # 006, the defendant had no financial incentive to induce the plaintiffs to take early retirement. Indeed, had the defendant persuaded the plaintiffs not to retire before July 1992, it would currently have no financial burden with respect to the plaintiffs' retiree health benefits.

For these reasons, the court concludes that the defendant made neither an offer nor a representation on the basis of which the court might apply the doctrine of equitable estoppel or that of promissory estoppel.[1] The plaintiffs' own testimony shows that there was no reasonable reliance on their part on a definite offer or representation. Several of the plaintiffs "understood" (their word) that they would have lifetime paid health benefits, an assumption based at least in part on prior retirees' experience. Several of the plaintiffs admitted, however, that no officer of the defendant or member of its management team promised such lifetime paid benefits. While some plaintiffs referred in their testimony to a posted bulletin, no plaintiff produced a writing on which one or more of the plaintiffs had relied in deciding to retire.

The plaintiffs' counsel argued that Mr. Schwartz and Mr. Curtis' statement about the plan, as amended by amendment # 006, that it was not "written in stone," implies

---

1. The elements of equitable estoppel and of promissory estoppel are discussed in detail in the opinion on which the plaintiffs rely, *Sprague v. General Motors Corporation, supra,* 857 F.Supp. at 1188–89. In light of the court's ruling in the case at bar, it is unnecessary to rule on whether *Sprague* states accurately the law of this circuit.

that before the amendment, it was. There is no basis in this record for such a negative inference. For example, there is no series of collective bargaining agreements in this case, as in *Armistead v. Vernitron Corporation, supra.* When the defendant advised the plaintiffs to make use of the window of opportunity before the effective date of amendment # 006, it was doing them a favor. When the defendant, in amendment # 008, exercised its reserved right to require employees and retirees, including the plaintiffs and those who had retired earlier, to contribute to paying for their health benefits, it was acting as the plan permitted, and not in violation of any promise or representation.

For the reasons stated, the court concludes in this case that the plaintiffs should recover nothing against the defendant. The court will therefore direct the clerk to enter a judgment for the defendant and against the plaintiffs in this civil action, in accordance with these findings of fact and conclusions of law.