**Robert Alexander CASE, M.D.; Bunker Stout, M.D., Plaintiffs–Appellants,**

v.

**PAGE–CAMPBELL, L.L.C., Defendant–Appellee.**

No. 01–5837.

United States Court of Appeals, Sixth Circuit.

Nov. 14, 2002.

Before MARTIN, Chief Judge, and NELSON and GILMAN, Circuit Judges.

NELSON, Circuit Judge.

This is an appeal from an order granting summary judgment in favor of a professional corporation that was sued for denying severance pay to a pair of physicians who quit their jobs with the corporation in

order to go into competition with it. The corporation's welfare benefit plan had been amended to make the payment of severance benefits discretionary. The plaintiff physicians claimed, however, that the amendment violated employment contracts which—while expressly providing that the corporation's severance pay policy was subject to change—contained a proviso prohibiting changes "that discriminate and do not apply to all Physicians."

We conclude that neither the adoption of the discretionary severance pay policy nor its application to the plaintiffs violated the anti-discrimination proviso. The judgment in favor of the defendant corporation will therefore be affirmed.

## I

In June of 1998 the plaintiff physicians, Drs. Robert A. Case and Bunker Stout, entered into substantially identical employment contracts with Page–Campbell Cardiology Group, P.C., a professional corporation based in Nashville, Tennessee.[1] Among the provisions of the employment contracts were these:

"22. Retirement or termination compensation. In the event of Physician's retirement or termination of employment with the Corporation, Physician shall be compensated according to the terms of the Severance Pay Policy and/or Wage Continuation Policy of the Corporation as may be in effect from time to time. . . .

23. Policies and Procedures. Each party agrees to be bound by the policies, procedures, standards, and regulations of the Corporation which may be in ef-

fect from time to time and which are contained in an addendum attached. Each party recognizes and accepts that these policies are subject to change and may be changed from time to time by the Directors of the Corporation and nothing herein prohibits such changes. The Corporation agrees, however, that no changes will be made that discriminate and do not apply to all Physicians."

The parties thus agreed that Page–Campbell could change its severance pay policy at any time, provided that the new policy did not "discriminate."

The severance pay policy in effect when Drs. Case and Stout were hired was not discretionary; it provided for automatic payment of benefits calculated under a formula geared to the departing physician's years of service. In August of 1998, however, the corporation adopted a new severance pay policy under which the payment of benefits was committed to "the sole discretion of the Executive Committee of the Corporation." Copies of the new policy were furnished to Drs. Case and Stout, along with copies of a memorandum that explained one circumstance in which benefits might not be awarded:

"Payments under the Severance Pay Policy of the Corporation may not be made in the event that a physician terminates employment and engages in the practice of medicine or otherwise provides professional medical services, either directly or indirectly, at . . . Cookeville Regional Medical Center in Cookeville, or at any other hospital in which the Corporation has an existing practice location."[2]

---

1. A limited liability company ("Page–Campbell, LLC"), the members of which were Page–Campbell Cardiology Group, P.C., and Vanderbilt University, was substituted as the employer effective January 1, 1999. The substitution has no bearing on this appeal, and

we shall refer to the employer as "the corporation" without regard to the change in organizational form.

2. If the policy had been changed to say flat out that there would be no severance pay for

About a year after receiving their copies of the memorandum and the new severance pay policy. Drs. Case and Stout quit their jobs and began providing professional medical services at Cookeville Regional Medical Center. They then requested severance benefits from Page–Campbell. The corporation's executive committee considered the doctors' requests at the same time it considered a similar request from another departing physician, Dr. Blair D. Erb, Jr. The committee decided that only Dr. Erb—who had no plans to provide medical services in competition with Page–Campbell—would receive severance pay. Drs. Case and Stout, the committee decided, would not receive such pay.

Drs. Case and Stout sued the corporation under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* The district court entered summary judgment in favor of the defendant, and this appeal followed.

## II

In determining that the denial of severance benefits to Drs. Case and Stout did not violate ERISA, the district court declined to consider the doctors' claim that the anti-discrimination proviso of their employment contracts insulated them from application of the new severance pay policy. The district court apparently understood this as a "state law contract claim[ ]" preempted by ERISA. Our understanding is different.

It seems to us that the question of which severance pay policy applies here is central to the physicians' ERISA claim, notwithstanding that the answer to the question depends on the interpretation of a contract. When considering an action to enforce an ERISA plan, a federal court may interpret and apply agreements that restrict an employer's right to modify the plan. See, *e.g., Gordon v. Barnes Pumps, Inc.,* 999 F.2d 133, 136 n. 2 (6th Cir.1993); *Boyer v. Douglas Components Corp.,* 986 F.2d 999, 1005 (6th Cir.1993); *In re White Farm Equipment Co.,* 788 F.2d 1186, 1193 (6th Cir.1986). That is precisely what Drs. Case and Stout invited the district court to do here. We believe the court erred in declining the invitation. We may, however, affirm the final judgment on any basis supported by the record. See, *e.g., Leary v. Daeschner,* 228 F.3d 729, 741 n. 7 (6th Cir.2000). Accordingly, we turn to the merits of the doctors' claim that the new severance pay policy was adopted and applied in violation of the physicians' employment contracts.

## III

The corporation clearly foreclosed itself from making *some* changes to its severance pay policy—specifically, changes "that discriminate and do not apply to all Physicians." But it does not follow that the particular change at issue in this case—adoption of a policy giving the executive committee "sole discretion" to award or withhold severance benefits—was contractually prohibited.

The new policy plainly applies to all Page–Campbell physicians. It makes payment of severance benefits discretionary for every departing physician, without exception. Dr. Erb, for example, received benefits only at the discretion of the executive committee, and not automatically, as he would have done under the previous policy. All that remains to be considered, then, is whether, in theory or in practice, the new policy "discriminate[s]."

The plaintiff physicians argue that the policy "discriminate[s]" insofar as it gives

---

any physician who terminated employment and provided medical services at Cookeville, the plaintiffs concede that the policy change would have been consistent with the anti-discrimination proviso of the employment contracts.

the executive committee discretion to award benefits to some departing doctors while withholding benefits from others. But discrimination, in the present context, means more than treating some people better than others. It means doing so arbitrarily, or on an improper basis. See *Black's Law Dictionary* 467 (6th ed.1990) (defining "discrimination" as "[a] failure to treat all persons equally where no reasonable distinction can be found between those favored and those not favored"). In cases brought under the employment discrimination statutes or the Equal Protection Clause, for example, disparate treatment is actionable only when the plaintiff was similarly situated to those who received better treatment. See, *e.g., Policastro v. Northwest Airlines, Inc.,* 297 F.3d 535, 538–39 (6th Cir.2002); *Richland Bookmart, Inc. v. Nichols,* 278 F.3d 570, 574 (6th Cir.), *cert. denied,* — U.S. —, 123 S.Ct. 109, — L.Ed.2d — (2002).

Insofar as Page–Campbell's new severance pay policy allows the executive committee to recognize and act upon the legitimate business reason of not funding competitors, it must be deemed nondiscriminatory. Otherwise no policy vesting discretion in a particular decision-maker could ever be held nondiscriminatory. Every differentiation between individual physicians—no matter how reasonable and benign the differentiation might be— would necessarily "discriminate." That cannot be the law.

It is true that Page–Campbell's executive committee might choose to exercise its discretion in a discriminatory manner. But the committee could just as easily choose, for discriminatory reasons, to disregard an express requirement to pay benefits. In either case the disfavored employee would have a remedy under ERISA. The fact that the committee could choose to apply the new severance pay policy in a discriminatory manner does not render the policy itself discriminatory.

Because Page–Campbell's new severance pay policy does not "discriminate," the parties' employment contracts did not prohibit adoption of the policy. It is the new policy, therefore, that governs the appellants' ERISA claim. Drs. Case and Stout concede, as they must, that the denial of their requests for benefits was proper if the policy itself was proper. The decision of the executive committee to withhold severance pay from the former employees who had elected to go into competition with the corporation, while granting severance pay to the former employee who had not become a competitor, was obviously a reasonable one. There was thus no improper discrimination in the application of the policy.

AFFIRMED.